[No. B077272. Second Dist., Div. Seven. Mar. 17, 1994.]

KOREAN AMERICAN LEGAL ADVOCACY FOUNDATION et al.,
Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent;
COMMUNITY COALITION FOR SUBSTANCE ABUSE PREVENTION
AND TREATMENT et al., Interveners and Respondents.

[No. B079224. Second Dist., Div. Seven. Mar. 17, 1994.]

KOREAN AMERICAN LEGAL ADVOCACY FOUNDATION et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF LOS ANGELES et al., Real Parties in Interest.

## Counsel

Stephen L. Jones for Plaintiffs and Appellants and for Petitioners.

Hinman & Carmichael, John A. Hinman, Lynne A. Carmichael, John A. C. Gibson, Pillsbury, Madison & Sutro, James M. Seff, Kevin M. Fong and J. Daniel Davis as Amici Curiae on behalf of Plaintiffs and Appellants and Petitioners.

James K. Hahn, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gwendolyn Ryder Poindexter, Deputy City Attorney, for Defendant and Respondent and for Real Parties in Interest.

Paul E. Lee, Mary M. Lee and Sharon M. Y. Lowe for Interveners and Respondents and for Real Parties in Interest.

No appearance for Respondent Superior Court.

## Opinion

JOHNSON, J.—In these actions owners/operators of retail stores licensed to sell alcoholic beverages sought to prevent the City of Los Angeles (City) from imposing any conditions or restrictions on the rebuilding of their businesses destroyed during the civil disturbance in spring 1992. They also sought to prevent the City from imposing conditions on the operation of existing businesses under threat of revoking their deemed approved status under the City's ordinance governing conditional uses.

Appellants and petitioners, Korean American Legal Advocacy Foundation, Soo Chun Cha, David Kim and Daniel K. Whang (plaintiffs), as taxpayers and persons affected by the City's actions, filed an action, inter alia, for injunctive and declaratory relief. They contended the City's ordinance was preempted by the California Constitution as well as provisions in

the Business and Professions Code which provide the exclusive means for regulating the sale of alcoholic beverages. The trial court denied their request for a preliminary injunction and later sustained the City's demurrer without leave to amend to those causes of action alleging state preemption of the City's ordinance. We affirm the trial court's order sustaining the demurrer without leave to amend to the causes of action based on state preemption and dismiss as moot the appeal of the trial court's order denying a preliminary injunction decided on the same grounds.

## FACTS AND PROCEEDINGS BELOW

Since 1985, the City has required a conditional use permit for off-site alcoholic beverage sales city wide. In 1987, the City adopted a specific plan for the sale of alcoholic beverages for the South Central area of Los Angeles. The specific plan required conditional use approvals for establishments dispensing alcohol in South Central Los Angeles and provided approval was contingent on specified findings.

Under either ordinance, existing uses before their operative dates became "deemed to be approved" conditional uses. (L.A. Mun. Code, § 12.24F.)[1] Thus, businesses such as those owned by the individual plaintiffs which operated before either the city wide conditional use permit ordinance or the specific plan were "grandfathered" and given "deemed approved" conditional use status.

During the civil disturbance of spring 1992, a number of these businesses were destroyed or damaged. In the aftermath of the civil disturbance, the City enacted legislation to facilitate rebuilding. Ordinances were adopted which provided for expedited procedures to process building permits in conformity with existing code provisions. Despite these expedited procedures, however, all conditional uses, including conditional uses selling alcoholic beverages for off-site consumption, had to submit plans for approval before rebuilding. (L.A. Mun. Code, § 12.24G.)

Although the plan approval process technically may not constitute a provision which requires a conditional use permit before rebuilding, the

---

[1] Los Angeles Municipal Code section 12.24F provides in part: "F. Existing Uses. (Amended by Ord. No. 161,716, Eff. 12/6/86.) Any lot or portion thereof being lawfully used for any of the purposes enumerated in this section at the time the property is first classified in a zone wherein such use is not permitted by right or at the time the use is prohibited by reason of an amendment to this article changing the permitted uses within the zone, *shall be deemed to be approved* site for such conditional use which may be continued thereon. Further, the conditions included in any special district ordinance, exception or variance which authorized such use shall also continue in effect." (Italics added.)

effect is essentially the same. This section provides approval of a rebuilding plan may be made contingent on agreement to conditions imposed "on the same basis as provided for in this section for the establishment of new conditional uses." (L.A. Mun. Code, § 12.24G(3).) Typically, the conditions imposed under this section as prerequisites to rebuilding require an owner to agree to remove graffiti promptly, provide adequate lighting, remove trash, provide a security guard and, in some instances, limit hours of operation.

In addition to the plan approval process, the City has instituted a number of so-called "revocation" hearings to revoke or condition an owner's deemed approved status or use permit in the event the business threatens to become, or has become, a nuisance or law enforcement problem in the area. (L.A. Mun. Code, § 12.24J.)

On May 10, 1993, plaintiffs filed a petition for writ of mandate and complaint for damages and declaratory and injunctive relief. On May 21, 1993, plaintiffs moved for a preliminary injunction to enjoin the City from pursuing its plan approval process for those owners who wished to rebuild and from conducting revocation hearings for existing businesses selling alcohol for off-site consumption. The trial court rejected plaintiffs' argument the City's ordinances were preempted by state statutory and constitutional provisions and denied the motion. The trial court found the City "has the authority to regulate land use, even though it cannot regulate licenses to sell liquor."

Plaintiffs filed a petition for writ of mandate with this court to review the denial of the preliminary injunction (B076378). We denied the petition on the basis the proper vehicle for review was by appeal. Plaintiffs then filed an appeal to challenge the denial of the preliminary injunction. The appeal is currently pending before this court (B077272).

On June 22, 1993, plaintiffs filed a first amended complaint. Causes of action 6 through 8 challenged the City's use of the plan approval process and causes of action 9 through 11 challenged the City's use of the revocation process. The City demurred to these causes of action on the ground the challenged ordinances were not preempted by state law. The trial court sustained the City's demurrer to these causes of action without leave to amend. The court found: "The City is not preempted by state law or by the State Constitution from exercising land use authority over uses which dispense alcohol for consideration."

Plaintiffs filed a petition for writ of mandate in this court (B079224) seeking to reverse the trial court's order dismissing its causes of action based on state preemption.

## DISCUSSION

I. *It Was Not an Abuse of Discretion to Sustain the City's Demurrer Without Leave to Amend as to the Causes of Action in the Complaint Alleging State Preemption.*

Plaintiffs' petition for writ of mandate seeks review of the trial court's order sustaining a demurrer without leave to amend to those causes of action which alleged the City's ordinances were preempted under state law.

On review of an order sustaining a demurrer without leave to amend an appellate court accepts as true all the properly pleaded facts in the complaint. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) When a demurrer is sustained, a reviewing court determines whether the complaint states facts sufficient to constitute a cause of action. If there is a reasonable probability the defect can be cured by amendment, the trial court has abused its discretion and we reverse. If the defect cannot be cured by amendment, there has been no abuse of discretion and we affirm. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

The facts of this case are not in dispute. Instead, the controversy involves the proper interpretation of the statutory and constitutional provisions which govern this case. We conclude the causes of action alleging state preemption have no merit and affirm the trial court's order.

A. *The City Is Not Preempted by Either Article XX, Section 22 of the California Constitution or the Alcoholic Beverage Control Act From Exercising Land-Use Authority Over Businesses Licensed to Sell Alcoholic Beverages for Off-site Consumption.*

Under the California Constitution, a "county or city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) This constitutional grant of power allows a certain amount of independence in matters of local concern. This local governmental independence is curbed, however, by the doctrine of state sovereignty, which may limit the power of local government when there is a conflict with the general laws of the state. (See *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 62 [81 Cal.Rptr. 465, 460 P.2d 137].) When such conflict is present local law is "preempted."

"Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citations], or enters an area

fully occupied by general law, either expressly or by legislative implication [citation]. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly character-ized as a 'municipal affair.' [Citations.]" (*People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484-485 [204 Cal.Rptr. 897, 683 P.2d 1150], citing *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 806-808 [100 Cal.Rptr. 609, 494 P.2d 681].)

■ Plaintiffs contend the City's plan approval and revocation processes are completely preempted by the state Constitution which specifies the state has exclusive authority to regulate the sale of alcoholic beverages. Article XX, section 22 of the California Constitution provides: "The State of California, subject to the internal revenue laws of the United States, shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages within the state. . . ." The State of California exercises this exclusive jurisdiction through the Alcoholic Beverage Control Act (Bus. & Prof. Code, § 23000 et seq.), which is enforced and administered by the California Department of Alcohol Beverage Control (ABC).[2]

Based on this constitutional provision, which gives exclusive jurisdiction to the ABC to regulate alcohol, plaintiffs contend the state has expressly stated its intention to completely preempt the field.

If the purpose and effect of the City's ordinances are to regulate the manufacture, sale, purchase, possession or transportation of alcoholic bever-ages, we would have to agree the state has expressly preempted the local regulation. Thus, the first, and perhaps most critical inquiry in this case is determining the nature, character and scope of the City's ordinances in order to analyze whether they conflict with the state constitutional or statutory provisions. (See, e.g., *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465, 473 [211 P.2d 564].)

Los Angeles Municipal Ordinance No. 162,128, known as the South Central Alcohol Sales Specific Plan, specially added off-site retail alcohol sales to the zoning codes as a use requiring a conditional use permit. The city council made specific findings the ordinance was necessary to protect

---

[2]All further statutory references are to the Business and Professions Code unless otherwise indicated.

the "peace, health, safety and general welfare" of persons living or working in the affected areas.[3]

As a conditional use, owners of retail establishments selling alcoholic beverages for off-site consumption wishing to rebuild after the civil disturbance had to first secure plan approvals pursuant to Los Angeles Municipal Code section 12.24G. This section provides:

"1. Development of Site. On any lot or portion thereof on which a conditional use is permitted pursuant to the provisions of this section, new buildings or structures may be erected, enlargements may be made to existing buildings, existing uses may be extended on an approved site, and existing institutions or school developments may be expanded as permitted in Subsection F of this section, *provided plans therefor are submitted to and approved by the Commission* or by a Zoning Administrator, whichever has jurisdiction at that time. . . .

" . . . . . . . . . . . . . . . . . . . . . . . .

---

[3]"WHEREAS, there is an unusually large number of establishments dispensing, for sale or other consideration, alcoholic beverages, including beer and wine, for off-site consumption, generally located in the South Central Area of the City of Los Angeles, including portions of the South Central Los Angeles, Southeast Los Angeles and West Adams District Plan Areas (hereinafter 'Area'); and

"WHEREAS, the existence of this inordinate number of establishments appears to directly contribute to numerous peace, health, safety and general welfare problems in the Area, including loitering, littering, drug trafficking, prostitution, public drunkenness, defacement and damaging of structures, pedestrian obstructions, as well as traffic circulation, parking, and noise problems on public streets and neighborhood lots; and

"WHEREAS, the existence of such problems creates serious impacts on the health, safety and welfare of the residents of nearby single and multiple family areas; including fear for the safety of their children and of visitors to the Area, as well as contributing to the deterioration of their neighborhoods, and concomitant devaluation of their property and destruction of their community values and quality of life; and

"WHEREAS, the District Plans for this Area provide for a commitment by 'the City to the redirection of its energies toward the improvement and upgrading of declining areas of Los Angeles in general and the South Central Los Angeles District in particular' and an intent to '. . . encourage and contribute to the economic, social and physical health, safety, welfare and convenience of the people who live in the District . . . contribute to a healthful and pleasant environment; balance growth with stability . . . and promote a socio-economic climate which will result in stable and desirable neighborhoods for the residents . . .'; and

" . . . . . . . . . . . . . . . . . . . . . . . .

"Whereas, the Working Group on Liquor Outlets has compiled information which indicates serious problems in this Area and provides the substantive information for the imposition of a permanent control measure to prohibit the introduction of any additional establishments or any expansion or changes in the mode or character of operation of such existing establishments within the Area unless new or expanded establishments have first been thoroughly reviewed by the City through a conditional use process; . . . ."

"Any person submitting development plans, or any other person aggrieved by a determination of the Director or his duly authorized representatives made relative to the approval or disapproval of a development plan may appeal said determination to the City Planning Commission. . . ." (Italics added.)[4]

The plan approval process, in turn, subjects the applicant to conditions an owner must agree to implement in order to secure approval. (L.A. Mun. Code, § 12.24G(3).) As noted, conditions imposed in the plan approval process generally include graffiti removal, trash removal, adequate lighting, security guards, protective fences and modified hours of operation.

In addition, establishments selling alcoholic beverages for off-site consumption are also subject to revocation of their conditional use permit or "deemed approved" status under the ordinance. Section 5 of the South Central Los Angeles Alcohol Specific Plan ordinance provides:

"For any conditional use, granted in accordance with the provisions of this ordinance or any existing use subject to this ordinance, and notwithstanding any provision of the Los Angeles Municipal Code to the contrary:

"The City Planning Commission may require the modification, discontinuance, or revocation of any such conditional use or existing use in accordance with the procedures and standards set forth in Section 12.24 J of the Los Angeles Municipal Code."

Section 12.24J of the Los Angeles Municipal Code describes the grounds for revocation hearings. This section provides:

"1. For any conditional use, granted in accordance with the provisions of this section or any existing use subject to Subsection F, and notwithstanding any other provision of this Code to the contrary:

"The City Planning Commission or the Zoning Administrator, whichever has jurisdiction, may require the modification, discontinuance, or revocation of any such conditional use or existing use, if the Commission or Administrator finds that the use as operated or maintained:

"(a) Adversely affects the health, peace, or safety of persons residing or working in the surrounding area; or

"(b) Jeopardizes or endangers the public health or safety of persons residing or working in the surrounding area; or

---

[4]Apparently all plaintiffs who have applied have received plan approval from the City.

"(c) Constitutes a public nuisance; or

"(d) Has resulted in repeated nuisance activities including but not limited to disturbances of the peace, illegal drug activity, public drunkenness, drinking in public, harassment of passersby, gambling, prostitution, sale of stolen goods, public urination, theft, assaults, batteries, acts of vandalism, loitering, excessive littering, illegal parking, excessive loud noises, especially in the late night or early morning hours, traffic violations, curfew violations, lewd conduct, or police detention and arrests; or

"(e) Violates any provision of this chapter, or any other city, state, or federal regulation, ordinance or statute."

The types of conditions imposed at an initial hearing to modify, discontinue or revoke a use are, again, the same as those imposed during the plan approval process.

These sorts of conditions do not directly regulate, or have as their effect the regulation of, alcohol licenses or the manufacture, sale, purchase, possession or transportation of alcoholic beverages. Instead the conditions generally imposed on an owner in the plan approval or revocation process attempt to control or eradicate the unlawful or undesirable activity which often occurs in the immediate vicinity of establishments which dispense alcoholic beverages for off-site consumption. Thus, despite plaintiffs' arguments to the contrary, the purpose and effect of the City's ordinance is not to dictate, restrict or regulate the actual sale of alcoholic beverages. Instead the focus of the ordinance is to abate or eradicate nuisance activities in a particular geographic area by imposing conditions aimed at mitigating those effects. These are typical and natural goals of zoning and land-use regulations. (*Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 605 [12 Cal.Rptr. 182].)

Plaintiffs, however, contend the Specific Plan for Retail Sales of Alcoholic Beverage in South Central Los Angeles unconstitutionally singles out businesses which sell alcoholic beverages. For this reason they argue the City ordinance in fact constitutes a regulation of the sale of alcoholic beverages which may only be done by the ABC.

This contention was answered by the court in *Floresta, Inc.* v. *City Council, supra,* 190 Cal.App.2d 599. In that case a company filed an application for a use permit to open a cocktail lounge. The application was denied under a city ordinance which prohibited any business selling alcoholic beverages within 200 feet of a residential district. On appeal the

company argued the city ordinance was preempted by state law, as only the ABC has authority to regulate alcohol sales and the city ordinance invalidly singled out businesses selling alcoholic beverages.

Justice Tobriner, writing for the Court of Appeal, rejected this argument stating, "[t]he argument confuses the function of zoning with that of the control of the sale of liquor. The essence of zoning lies in metropolitan and regional planning; it is the use and treatment of public and private land and its appurtenances in the interests of the community as a whole. The factors and reasons that determine the imposition of metropolitan zoning are entirely different from those which control the regulation of the consumption of liquor. To compress zoning or city planning into the mold of liquor regulation is to reduce its compass to a single aspect of its impact. That it may cover the regulation of the sale or consumption of liquor does not mean that it merely proposes liquor control; its sweep and design are wide; its particular application in the prohibition of a cocktail lounge does not correspondingly limit its scope or purpose." (190 Cal.App.2d at p. 605, fns. omitted.)

Similarly in the case at bar, the City's ordinance is a geographic limitation which imposes conditions on restricted businesses allowed to operate within the particular area. The focus of the City's ordinance is on the negative conduct which tends to occur on premises immediately surrounding retail establishments selling alcoholic beverages for off-site consumption. The effect of the conditions imposed under the ordinance is to reduce or eliminate the nuisance activities these businesses tend to attract. That the conditions imposed under the ordinance may have some indirect impact on the sale of alcoholic beverages does not transmute the purpose and scope of the ordinance into a regulation merely seeking to control alcohol sales. (See *Floresta, Inc.* v. *City Council, supra*, 190 Cal.App.2d at p. 605.)

Accordingly, neither the City's plan approval process for rebuilding nor its revocation process attempts to invade the exclusive power given to the state by article XX, section 22 of the California Constitution by regulating alcohol sales. Instead the ordinance constitutes a valid exercise of the City's police powers under article XI, section 7 of the California Constitution to control and abate nuisances. (See *City of Rancho Cucamonga* v. *Warner Consulting Services, Ltd.* (1989) 213 Cal.App.3d 1338, 1345 [262 Cal.Rptr. 349] [city's authority to regulate entertainment in clubs licensed to sell alcoholic beverages derives from its general police powers and not from article XX, section 22 of the Constitution which reserves the right to regulate alcohol sales and licensees to the ABC].)

Consequently, the City ordinance is not expressly preempted by article XX, section 22 of the California Constitution granting exclusive authority to

the ABC to regulate alcohol sales. (See also *Cristmat, Inc.* v. *County of Los Angeles* (1971) 15 Cal.App.3d 590 [93 Cal.Rptr. 325] [ordinance prohibiting persons in model studios while possessing, consuming, using or under the influence of alcoholic beverages was a valid police regulation which did not invade exclusive power of the state to regulate alcohol sales].)

Plaintiffs contest this finding. They claim the effect of the City's ordinances nevertheless is to prohibit all alcohol sales by businesses affected by the plan approval or revocation process because the conditions imposed during those processes are prohibitively expensive for the typical small business operation.

█ We agree a local governmental entity may not entirely prohibit alcohol sales within its jurisdiction. (*Town of Los Gatos* v. *State Bd. of Equal.* (1956) 141 Cal.App.2d 344, 346 [296 P.2d 909] ["There is no doubt that local option has been terminated. Zoning ordinances cannot single out and prohibit the sale of liquor as such."]; see also *Mussalli* v. *City of Glendale* (1988) 205 Cal.App.3d 524 [252 Cal.Rptr. 299] [ordinance imposing total ban on alcohol sales at gas stations invalid under California Constitution and as applied to "grandfathered" businesses which preexisted enactment of ordinance].) We also agree local regulations may not be arbitrary or unreasonable. (*Town of Los Gatos* v. *State Bd. of Equal.*, *supra*, 141 Cal.App.2d at p. 346.)

However, the question of whether in a given case certain combinations of conditions may be arbitrary, unreasonable, or may impinge on the ABC's authority is not before this court. The question is whether the City's ordinance as a general matter is expressly preempted under article XX, section 22 of the California Constitution as a regulation of alcohol sales. Unlike the situations discussed in the cases just cited, the ordinance in the case at bar is not a total prohibition on alcohol sales. We therefore conclude, the City's ordinances which instead regulate land use and zoning are not expressly preempted by state law.

█ The next inquiry is whether the City's ordinances either duplicate or contradict state law.

Plaintiffs do not suggest the City's ordinances contradict state law. They argue the conditions imposed under the ordinances which purport to regulate nuisance activities duplicate certain provisions of the Alcoholic Beverage Control Act. They note under sections 23800 and 23801 the ABC

may impose conditions on a licensee, including conditions regarding hours of sale, display of signs, employment of designated persons, types and strengths of alcoholic beverages, and the personal conduct of the licensee. Section 24200 authorizes the ABC to suspend or revoke the license of a retail merchant who refuses to abate or control nuisance activities on the licensed premises or on the area immediately adjacent to the premises. In addition, section 24201 provides any person may make accusations against a licensee with the ABC in the event the business threatens to become a nuisance, and section 24203 provides for expedited hearings by the ABC in the event local governmental entities make similar accusations.

Superficially, the City's ordinances providing for abatement of nuisance activities occurring at licensed premises appear to overlap with the state law provisions. While the underlying purpose of both the City's and ABC's actions may be to abate or eradicate nuisance activities, the focus and ultimate outcome of each procedure are completely different.

Under the provisions of the Alcoholic Beverage Control Act, should the ABC conclude the accusations are true, a licensee stands to lose his or her alcoholic beverage license. However, even if the ABC revokes a license to sell alcohol that person would still be able to continue the other aspects of the business. Under the City's ordinance, on the other hand, a licensee risks the imposition of further land use conditions or the loss of his or her conditional use permit or "deemed approved" status. A licensee, however, would not lose his or her alcoholic beverage license under the City's procedures to abate nuisances and could presumably transfer the license to other business premises. (§ 24070 et seq.) Thus, the specific interests and the jurisdiction of each do not conflict. (Cf. *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 683 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385] [could be jurisdictional problems if both local government and state prosecuted and punished for same crime].)

■■-■■ We acknowledge the ultimate sanction of permit, or "deemed approved" status, revocation could have the effect of prohibiting the sale of alcoholic beverages at a particular offending location.[5] However, nothing in the Act evidences an intent for the ABC to exercise sole and

---

[5]Once a licensee has acquired a conditional use permit, or has "deemed approved" status, a municipality's power to revoke the conditional use is limited. (*Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 783 [194 P.2d 148].) If the permittee has incurred substantial expense and acted in reliance on the permit, the permittee has acquired a vested property right in the permit and is entitled to the protections of due process before the permit may be revoked. (*Id.* at p. 795.) "In determining that a permit, validly issued, should be revoked, the governing body of a municipality acts in a quasi-judicial capacity. In revoking a

exclusive authority to abate nuisances on premises licensed for off-site sales of alcoholic beverages. (See, e.g., *Yu* v. *Alcoholic Bev. etc. Appeals Bd.*

permit lawfully granted, due process requires that it act only upon notice to the permittee, upon a hearing, and upon evidence substantially supporting a finding of revocation." (*Ibid.*)

"When a permittee has acquired such a vested right it may be revoked if the permittee fails to comply with reasonable terms or conditions expressed in the permit granted [citations] or if there is a compelling public necessity. (*Jones* v. *City of Los Angeles* [(1930) 211 Cal. 304,] 314 [295 P. 14]; see *Lawton* v. *Steele* [1894)] 152 U.S. 133, 137 [38 L.Ed. 385, 388, 14 S.Ct. 499]." (*O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151, 158 [96 Cal.Rptr. 484].) A compelling public necessity warranting the revocation of a use permit for a lawful business may exist if the conduct of a business as a matter of fact constitutes a nuisance and the permittee refuses to comply with reasonable conditions to abate the nuisance. In these circumstances a municipality has the authority to remove such a business under its police power to prohibit and enjoin nuisances. (*Jones* v. *City of Los Angeles, supra,* 211 Cal. at p. 316.) However, in order to justify the interference with the constitutional right to carry on a lawful business it must be clear the public interests require such interference and that the means employed are reasonably necessary to accomplish the purpose and are not unduly oppressive on individuals. (*Lawton* v. *Steele* (1894) 152 U.S. 133, 137 [38 L.Ed. 385, 388, 14 S.Ct. 499]; *Leppo* v. *City of Petaluma* (1971) 20 Cal.App.3d 711, 717 [97 Cal.Rptr. 840].)

Los Angeles Municipal Code section 12.24J, subsection 2 codifies these requirements of due process before revoking a permit. That section provides:

"2. Procedures-Notice-Hearings-Appeals.

"The Commission or Administrator, whichever has jurisdiction, may give notice to the record owner and lessee of the real property affected to appear at a public hearing at a time and place fixed by the Commission or the Administrator, and show cause why the use should not be modified, discontinued, or revoked as the case may be. A written notice shall be mailed not less than 24 days prior to the date of hearing to the owner and lessee of the property involved, and to the owners of all property within and outside of the City that is within 500 feet of the exterior boundaries of the property involved, . . . .

"After such notice and hearing, the Commission or Administrator may require the modification, discontinuance, or revocation of the subject use. As part of any such action, the Commission or Zoning Administrator, whichever has jurisdiction, may impose such conditions as the Commission or Administrator deems appropriate including those necessary to protect the best interests of the surrounding property or neighborhood; to eliminate, lessen, or prevent any detrimental effect thereon, or to assure compliance with other applicable provisions of law. . . .

"Any such action shall be supported by written findings, including a finding that it does not impair the constitutional rights of any person. However, the Commission or Zoning Administrator may require that a use be discontinued or revoked only if the Commission or Administrator also finds that (a) prior governmental efforts to get the owner or lessee to eliminate the problems associated with the use have failed; and (b) that the owner or lessee has failed to demonstrate, to the satisfaction of the Commission or Administrator, the willingness and ability to eliminate the problems associated with the use.

"An appeal from the action of the Commission may be taken to the Council . . . . [¶] Only the Commission or Administrator, whichever has jurisdiction, may require the discontinuance or revocation of a conditional use or existing use subject to 12.24F. Further, if it is established to the satisfaction of the Board or Council that the proposed action impairs the constitutional rights of any person, then it shall modify the proposed action accordingly."

Nevertheless, it is clear revocation of a use permit could have the effect of putting the licensee completely out of business. It is consequently a very harsh remedy which requires the

(1992) 3 Cal.App.4th 286 [4 Cal.Rptr.2d 280] [within purview of ABC to revoke license because illegal drug activity in area immediately adjacent to premises had become nuisance; did not hold ABC had exclusive jurisdiction to abate or eradicate nuisances]; *Goat Hill Tavern* v. *City of Costa Mesa* (1992) 6 Cal.App.4th 1519 [8 Cal.Rptr.2d 385] [city could have sought nuisance determination if it thought it necessary to revoke tavern's conditional use permit]; cf. *Century Plaza Hotel Co.* v. *City of Los Angeles* (1970) 7 Cal.App.3d 616 [87 Cal.Rptr. 166] [Los Angeles ordinance imposing excise tax on alcohol sales consumed on the premises preempted by overriding state interests].) Consequently, we see no conflict in the City exercising its constitutionally authorized police powers to prohibit nuisances on premises licensed to sell alcoholic beverages for off-site consumption under either its revocation hearing process or by filing a civil complaint to enjoin such activities. (Cal. Const., art. XI, § 7; *Jones* v. *City of Los Angeles* (1930) 211 Cal. 304 [295 P. 14].)

■ The next step in the analysis is to determine whether the statutory scheme evidences an intent to occupy the field by implication. As noted, the Legislature enacted the Alcoholic Beverage Control Act (§ 23000 et seq.) to carry out the constitutional provision. The act expressly excludes from the jurisdiction of the ABC and reserves to local governments the right to impose reasonable land use and zoning controls. Section 23790 provides in part: "No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a *valid zoning ordinance of any county or city. . . .*" (Italics added.) Section 23791 provides: "Nothing in this division interferes with the powers of cities conferred upon them by Sections 65850 to 65861, inclusive, of the Government Code." Those provisions of the Government Code outline the power of local governments to impose reasonable land-use and zoning restrictions.

By expressly reserving to local governments the right to enact local zoning ordinances, and by expressly making the issuance of licenses contingent on satisfying any existing, valid local zoning requirement, it is clear the Legislature did not intend for the state legislation to preempt local zoning regulations. "Where the statute contains language indicating that the Legislature did not intend its regulations to be exclusive, the general rule permitting additional supplementary local regulations has been applied." (*Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674, 683.)

strictest adherence to principles of due process. Whenever alternate remedies can achieve the same goal, such as the imposition of additional conditions or controls, these avenues ought to be pursued if feasible. (See, e.g., *O'Hagen* v. *Board of Zoning Adjustment, supra,* 19 Cal.App.3d at p. 165.)

Because the statutory language of the Alcoholic Beverage Control Act expressly allows local governments to enact supplementary legislation directed at zoning or land use, there is no preemption by implication of the City's ordinances which are directed at the land use effects of these businesses. (*Jon-Mar Co.* v. *City of Anaheim* (1962) 201 Cal.App.2d 832, 837 [20 Cal.Rptr. 350] ["By statutory provision the intent to extend state control to zoning matters through an exercise of its liquor license authority is expressly negatived."].)

In sum, we are persuaded state law has not completely preempted the field and the local regulation is a valid exercise of the City's authority to enact zoning and land-use regulations.

B. *Section 23790 No Longer Provides Plaintiffs Immunity From Compliance With Local Valid Zoning Ordinances.*

Plaintiffs point out their businesses were in existence at the time the City enacted the ordinance making retail businesses which sell alcoholic beverages for off-site consumption conditional uses. Consequently, they contend the City violates the Alcoholic Beverage Control Act when it applies either the plan approval process, with its conditions for rebuilding, or the revocation hearing process, imposing conditions for the right to continue business, to these businesses. They contend the City is preempted by section 23790 from applying the later enacted ordinances authorizing these procedures to "grandfathered" businesses. Section 23790 provides:

"No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city. Premises which had been used in the exercise of those rights and privileges at a time prior to the effective date of the zoning ordinance may continue operation under the following conditions:

"(a) The premises retain the same type of retail license within a license classification.

"(b) The licensed premises are operated continuously without substantial change in mode or character of operation.

"For purposes of this subdivision, a break in continuous operation does not include:

"(1) A closure for not more than 30 days for purposes of repair, if that repair does not change the nature of the licensed premises and does not

increase the square footage of the business used for the sale of alcoholic beverages.

"(2) The closure for restoration of premises rendered totally or partially inaccessible by an act of God or a toxic accident, if the restoration does not increase the square footage of the business used for the sale of alcoholic beverages."

Based on this provision plaintiffs acknowledge the Legislature empowered a city, through local zoning ordinances, to control the approval process for the initial issuance of a liquor license. However, the plaintiffs argue, once a license has been issued, a "grandfathered" licensee's right to continue a business selling alcoholic beverages is not affected by, and cannot be conditioned on compliance with, any later enacted zoning ordinance.

However, section 23790 under the circumstances presented in this case, provides no protection to those initially "grandfathered" businesses which have not "operated continuously without substantial change in mode or character of operation" within the meaning of this section. Under section 23790 a business is considered to be continuously operating despite an interruption of up to 30 days for repairs or for an interruption for an unspecified amount of time for restorations made necessary by an "act of God" or "toxic accident." None of these exceptions is applicable to plaintiffs' situation.

Many of the plaintiffs' businesses were destroyed during the civil disturbance in spring 1992 and have remained closed. Because more than 30 days have elapsed and the businesses have not reopened, the first exception does not apply. Nor can plaintiffs fit their situation into the second statutory exception. The civil disturbance which resulted in the destruction of their businesses was not caused by a toxic accident. Nor did an act of God, such as a flood, earthquake, lightning, hurricane or the like, destroy their businesses. Instead the reason their businesses are not continuing in operation is because the facilities were destroyed by the willful, intentional or accidental acts of human beings. ▮ Destruction caused by human intervention by definition is not an "act of God" as that term is understood. The generally accepted definition of "act of God" only includes acts "occasioned exclusively by violence of nature without the intervention of any human agency. It means a natural necessity proceeding from physical causes alone without the intervention of man. It is an act, event, happening, or occurrence, a disaster and effect due to natural causes and inevitable necessity which implies entire exclusion of all human agency which operates without interference or aid from man and which results from natural causes and is in no

sense attributable to human agency. It is an accident which could not have been occasioned by human agency but proceeded from physical causes alone." (Black's Law Dict. (4th ed. 1951) p. 43, col. 2.)

■ Because the civil disturbance and resulting destruction of businesses involved affirmative willful or accidental acts of human beings, the "act of God" exception is not applicable to exempt plaintiffs' businesses from the requirement of "continuous operation" to maintain their "grandfathered" status.

Nevertheless, plaintiffs suggest we should construe "act of God" in this section to mean "any catastrophe beyond the control of the owner." They point to language in a report prepared for the Assembly Committee on Governmental Organization concerning the amendment which added the exceptions to the "continuous operation" requirement to section 23790. In the report the author of the amendment stated "emergency shutdown due to a nearby toxic spill, industrial accident, or due to a natural disaster such as a flood, should not be held against the licensee since these are external events over which the licensee has no control." (Assem. Com. on Governmental Organization, Analysis of Assem. Bill No. 183 (1988-1989 Reg. Sess.).) The same report noted the amendment was prompted in part by the confusion some local retailers experienced after the Whittier earthquake in 1989.

However, there is nothing in the report to indicate the Legislature intended all catastrophic events in which the licensee did not personally take part should qualify as an occurrence justifying special treatment. Indeed, after considering the issue, the only man-made catastrophe included as an exception to the "continuous operation" requirement, and the only occurrence apparently considered sufficiently beyond the control of a licensee, was a toxic accident. Otherwise only natural disasters, or acts of God, were considered sufficiently beyond the control of a licensee to warrant special treatment. In the absence of clear legislative intent for an expansive interpretation of incidents which do not constitute breaks in operation, we decline plaintiffs' invitation to read such language into the statute.

Next, plaintiffs argue we should construe the language of section 23790 in light of the much broader language of section 24081. Section 24081, pertaining to the transfer of licenses, provides in pertinent part: "(b) Notwithstanding any other provision of law in this division, including, but not limited to, requirements relating to the issuance or transfer of a license, any licensee whose premises, for which an off-sale license has been issued, have been destroyed as a result of fire or any act of God or other force beyond the

control of such licensee, may carry on his business for a period of not more than six months at a location within 500 feet of the premises for which the license was issued and while such premises are being repaired or rebuilt and he shall be entitled to carry on his business under his existing license upon the former premises when they have been repaired or rebuilt."

As plaintiffs point out, the language of section 24081 is considerably broader than that employed in section 23790. However, the purpose and effect of the two provisions are quite distinct. Section 24081 merely provides a licensee does not lose his or her license, and need not reapply for a liquor license in the event his or her business is destroyed by one of the enumerated events, provided the licensee satisfies the other requirements of the statute. This provision makes no distinction between conforming and nonconforming uses at the time of the disaster.

On the other hand, section 23790 does not address the issue of the retention of a liquor license once issued. This section instead specifies the conditions under which a licensee may retain his or her "grandfathered" status as a "deemed approved," but nonconforming use for the particular geographic area. "Grandfathered" businesses are nonconforming uses, and are not required to seek use permits under local zoning ordinances enacted after they were licensed for off-site alcohol sales. Consequently, it makes sense for the number and types of events allowing these nonconforming uses to continue without complying with updated codes to be narrow and limited.

This interpretation is consistent with the language of section 23790, which attempts to curtail growth of "grandfathered" but nonconforming uses. The statutory exceptions for events considered breaks in operation limit authorized closures for repair or restoration to those which do not expand the square footage of any business used for the sale of alcoholic beverages on penalty of losing "grandfathered" status. This statutory limitation evidences legislative intent to restrict any expansion of nonconforming, but "grandfathered" businesses.

The language of section 23790 persuades us the Legislature intended to strictly control the circumstances under which a business could retain "grandfathered" status. The qualifying events the Legislature chose as exceptions to "continuous operations" are few and extraordinary. These qualifying events, in turn, must be narrowly construed as exceptions to the general statutory scheme. (*City of National City* v. *Fritz* (1949) 33 Cal.2d 635, 636 [204 P.2d 7].) Thus, we reject an interpretation of section 23790 which would permit any and all acts theoretically beyond the control of a

licensee to constitute exceptions to the requirement of "continuous operations."

As plaintiffs' businesses have been closed since 1992 they are not in continuous operation and by definition have undergone a substantial change in the mode or character of operation. Accordingly, because of the break in continuous operations, plaintiffs' businesses are no longer "grandfathered" or "deemed approved" conditional uses under section 23790. Since continuous operation is a requirement to retaining "grandfathered" or "deemed approved" status under section 23790, the statute provides plaintiffs no immunity from compliance with existing valid zoning ordinances affecting their businesses.[6]

## II. *The Appeal From the Denial of the Preliminary Injunction Is Moot.*

The eighth and eleventh causes of action in plaintiffs' complaint sought to enjoin the City from conducting any further revocation hearings or plan approval hearings for those owners having "deemed approved" status. The legal basis for seeking the preliminary injunction was plaintiffs' assertion the City's ordinance authorizing those procedures was preempted under state constitutional and statutory law. As noted, the trial court denied the preliminary injunction and plaintiffs appealed.

While this appeal was pending, the trial court sustained a demurrer without leave to amend to these causes of action. Because the sole legal basis for seeking a preliminary injunction was based on state preemption of the City's ordinance, plaintiffs' appeal from the denial of an injunction is now moot.

As we stated in *MaJor* v. *Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618 [9 Cal.Rptr.2d 237]: "A preliminary injunction is an interim

---

[6]We note Los Angeles Municipal Ordinance No. 162,128, referred to as the South Central Alcohol Sales Specific Plan, attempted to track the language and rationale of section 23790 by providing an establishment selling alcoholic beverages for off-site consumption would lose its "deemed approved" status in the event there was a substantial change in the mode or character of operations. Section 4 of that ordinance provides:

"The use of a lot for an establishment dispensing, for sale or other consideration, alcoholic beverages, including beer and wine, for off-site consumption may not be continued or reestablished without conditional use approval granted in accordance with the provisions of this ordinance, if any of the following occur after the effective date of this ordinance:

"A. The establishment changes its type of retail liquor license within a license classification; or

"B. The operation of the establishment is abandoned or discontinued, including the case where the license for such operation is suspended; or

"C. There is a substantial change in the mode or character of operation of the establishment."

remedy designed to maintain the status quo pending a decision on the merits. [Citation.] It is not, in itself, a cause of action. Thus, a cause of action must exist before injunctive relief may be granted. [Citation.] Accordingly, where the complaint fails to state a cause of action an order granting a preliminary injunction must be reversed. [Citation.]

"An appeal from an order denying a preliminary injunction does not deprive the trial court of jurisdiction to proceed to try the case on the merits. [Citations.] If the court can try the case on the merits then a fortiori it can determine the case has no merit by sustaining a demurrer without leave to amend. In the present case, the trial court having sustained a demurrer without leave to amend to the only cause of action which might have supported a preliminary injunction in favor of Ms. MaJor, her appeal from the denial of a preliminary injunction is moot." (*MaJor* v. *Miraverde Homeowners Assn.*, *supra*, 7 Cal.App.4th at p. 623.)

 Similarly in the case at bar, the trial court sustained the City's demurrer without leave to amend to those causes of action alleging the City's procedures were preempted by state constitutional and statutory law. Because these were the only causes of action which would have supported a preliminary injunction in plaintiffs' favor, their appeal from the denial of a preliminary injunction is dismissed as moot. (See also, *Watson* v. *Santa Carmelita etc. Co.* (1943) 58 Cal.App.2d 709, 719 [137 P.2d 757] [a cause of action must exist before injunctive relief may be granted]; *Shell Oil Co.* v. *Richter* (1942) 52 Cal.App.2d 164, 168 [125 P.2d 930] [injunctive relief is a remedy and not in itself a cause of action, valid cause of action must exist before injunctive relief may be granted].)

## DISPOSITION

The appeal (B077272) is dismissed as moot. The petition for writ of mandate (B079224) is denied. The temporary stay is dissolved and the matter remanded for further proceedings. Each party to bear its own costs of appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied April 15, 1994, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied July 14, 1994. Mosk, J., and Arabian J., were of the opinion that the petition should be granted.