*1800
 
 Opinion
 

 WOODS (A. M.), P. J.
 

 Frank Boccato and Ronald Duffaut (Boccato and Duffaut or appellants) appeal the dismissal of their action challenging an ordinance enacted by the City of Hermosa Beach (the City) that required them to obtain conditional use permits in order to continue to sell alcoholic beverages at their respective businesses, Boccato’s Groceries and Dan’s Liquor.
 

 Boccato’s Groceries and Dan’s Liquor are licensed by the state Department of Alcoholic Beverage Control (the ABC) to sell alcoholic beverages and have been so licensed continuously for the more than 20 years each has been in business. Neither business has a history of complaints from their neighbors nor police problems. In 1976, the City enacted an ordinance that required a conditional use permit (CUP) as a prerequisite for operation of off-sale liquor businesses like appellants’. Since appellants’ businesses preexisted the 1976 ordinance, they were not required to comply with it. In 1986, however, the City enacted the ordinance at issue here, Ordinance No. 86-865 (the Ordinance). The Ordinance required all off-sale liquor businesses, including appellants, to obtain CUP’s if they wished to continue to sell alcoholic beverages in the City.
 

 Section 8-10 of the Ordinance imposed 15 conditions on all off-sale liquor businesses, most of which were directed at nuisance abatement. For example, condition 3 states: “Measures shall be taken to control loitering and littering on the premises at all times.” Condition 5 requires that “[t]he entire parking lot shall be illuminated and designed not to produce glare on adjoining property; lighting shall be reviewed and approved by the Planning Commission.” In condition 7, the business was required to provide “adequate management and supervisory techniques to prevent loitering, littering, unruliness, and boisterous activities of patrons outside the business or in the immediate area.” Condition 9 grants the police chief the power to “determine that a continuing police problem exists,” and to “require the presence of a police approved doorman and/or security personnel.” In addition, condition 13 required that “[pjrior to a Conditional Use Permit being in effect, the applicant shall submit to the Planning Department, a signed and notarized ‘Acceptance of Conditions’ form.” Condition 14 required that the CUP “be recorded with the deed, and proof of recordation ... be submitted to the Planning Department.” The final condition, condition 15, gave the planning department the power to review the CUP and “amend the subject conditions or impose any new conditions if deemed necessary to mitigate detrimental effects on the neighborhood resulting from the subject use.”
 

 Section 1304 of the Ordinance set forth the application process by which the CUP was to be obtained by operators of existing alcoholic beverage
 
 *1801
 
 businesses. As a penalty for failing to obtain or being denied a CUP within the specified time periods “such establishment, shall no longer have the legal authority to sell alcoholic beverages within the boundaries of the City of Hermosa Beach.”
 

 Following enactment of the Ordinance, the City sent notices to both appellants ordering them to apply for permits. Both appellants retained counsel and challenged the Ordinance on various grounds, but they also went through the City’s administrative process to obtain the CUP’s in order to exhaust their administrative remedies as a prerequisite to filing a legal action. Ultimately, the city council adopted resolutions imposing CUP’s on each business and setting forth the conditions under which they could continue in business. Appellants were required to accept the conditions and record them with the county recorder’s office as part of the chain of title to their respective properties.
 
 [1]
 

 
 *1802
 
 On August 2,1991, appellants initiated a legal action by filing a complaint for damages, declaratory and injunctive relief and a petition for writ of mandate. The first through third causes of action for declaratory and injunctive relief alleged that the Ordinance was unconstitutional both facially and as applied to appellants’ businesses, because it was preempted by state regulation of alcoholic beverages. The fourth and fifth causes of action were brought under state and federal civil rights statutes, specifically Civil Code section 52.1 and 42 United States Code section 1983. It was alleged that the Ordinance denied appellants equal protection and also that it was unconstitutionally vague and overbroad, constituted an attempted taking of property and was subject to arbitrary enforcement. The sixth cause of action alleged that a CUP was not required of Boccato because he was in a C-l, not a C-2, zone. The seventh cause of action sought issuance of a peremptory writ of mandate ordering the City to set aside and vacate the conditions it had imposed on appellants’ businesses.
 

 The City, demurred to the complaint. It contended that the second through fifth causes of actions failed to allege compliance with the Tort Claims Act;
 
 *1803
 
 that the first through fifth causes of action failed to state a cause of action for denial of equal protection under either state or federal law because appellants were not members of protected classes for whom those laws were enacted; and that appellants were impermissibly joined in the petition for writ of mandate.
 

 The court sustained a demurrer without leave to amend as to the second, third, fourth and fifth causes of action for damages, because they failed to allege compliance with the Tort Claims Act. It also sustained a demurrer with leave to amend as to those causes of action raising constitutional claims under Civil Code section 52.1 and 42 United States Code section 1983. Finally, it sustained a demurrer with leave to amend as to the seventh cause of action, a petition for writ of mandate.
 

 Appellants then filed a first amended complaint which, in essence, realleged their first six causes of action but omitted any claim for damages and split their cause of action for writ of mandate into two separate causes of action naming each of them separately. The City again demurred but its demurrer was overruled. The City then answered.
 

 A hearing on the petitions for writ of mandate was set for April 24, 1992, as was the City’s motion for partial judgment on the pleadings. At the hearing the trial court received into evidence the administrative records of both appellants and took the matter under submission. By minute order, the court denied the petitions for writ of mandate on the grounds that the Ordinance was not preempted by state law, nor unconstitutional either facially or as applied, and granted the City’s motion for partial judgment on the pleadings. Judgment was entered and this appeal ensued. We affirm in part and reverse in part.
 

 I
 

 Before addressing the legal arguments, it is necessary to make some preliminary observations about the scope and purpose of appellate review. The procedural posture in which this appeal reaches us is somewhat confusing. Appellants’ complaint joined causes of action for declaratory and injunctive relief (one through six) to causes of action for peremptory writ of mandate (seven and eight). As we read the judgment, the first six causes of action were disposed of by the granting of the City’s partial motion for judgment on the pleadings followed by a judgment of dismissal, while the two causes of action for peremptory writ were disposed of by denial.
 

 The standards of review are different for the two dispositions, a point both parties fail to address. A judgment on the pleadings is reviewed under
 
 *1804
 
 the same standard by which a judgment following the sustaining of a demurrer is reviewed; the question is, assuming the truth of the pleadings, does the complaint state a cause of action.
 
 (Fosgate
 
 v.
 
 Gonzales
 
 (1980) 107 Cal.App.3d 951, 957 [166 Cal.Rptr. 233].) Denial of a petition for writ of mandate is reviewed to determine whether the trial court abused its discretion.
 
 (Berry
 
 v.
 
 Coronado Board of Education
 
 (1965) 238 Cal.App.2d 391, 397 [47 Cal.Rptr. 727].) We apply these different standards of review as is appropriate.
 

 Besides failing to acknowledge the proper standards of review, the parties also launch into their argument without clearly distinguishing the specific cause of action to which a particular argument applies. Insofar as it can be determined, it appears that appellants’ claim that the Ordinance is preempted by state constitutional and statutory provisions governing the sale of alcoholic beverages, applies to the first, second and third causes of action for injunctive and declaratory relief and to the seventh and eighth causes of action for writ of mandate. Their contention that they stated causes of action under state and federal civil rights statutes, Civil Code section 52.1 and 42 United States Code section 1983, applies to their fourth and fifth causes of action. No argument is made with respect to the dismissal of the sixth cause of action and any argument is thereby deemed waived.
 
 (In re Marriage of Ananeh-Firempong
 
 (1990) 219 Cal.App.3d 272, 278 [268 Cal.Rptr. 83].) Finally, it is necessary to remind appellants of the elementary appellate principle that on review of any judgment, the judgment is presumed correct and error must be affirmatively shown.
 
 (Ibid.)
 

 With this in mind, we now turn to the legal contentions before us.
 

 II
 

 The central issue in this appeal is whether the City’s zoning Ordinance is unconstitutional because it represents an incursion into the state’s preemptive jurisdiction over the regulation of the sale of alcoholic beverages. (Cal. Const., art. XX, § 22.) In
 
 Korean American Legal Advocacy Foundation
 
 v.
 
 City of Los Angeles
 
 (1994) 23 Cal.App.4th 376 [28 Cal.Rptr.2d 530], Division Seven of this court concluded, under strikingly similar circumstances, that a zoning ordinance directed at the abatement of potential nuisance activity around businesses engaged in the sale of alcoholic beverages was not preempted by state law notwithstanding its potential for prohibiting the sale of alcohol at particular locations that failed to comply with the ordinance.
 
 (Id.
 
 at pp. 389-392.) Despite appellants’ attempts, we find no grounds to distinguish
 
 Korean American
 
 from the instant case and will therefore follow it.
 

 
 *1805
 
 The relevant facts in
 
 Korean American
 
 are as follows: In 1985, Los Angeles enacted an ordinance that required off-sale liquor stores to obtain CUP’s as a condition for sale of alcoholic beverages. Preexisting businesses were “deemed approved” and exempted from the ordinance. In 1992, however, a number of these “deemed approved” businesses were damaged or destroyed in the riot that followed the Rodney King verdict. Following the riot, Los Angeles enacted ordinances that, in effect, made approval of the rebuilding of these “deemed approved” businesses contingent upon their compliance with the conditions imposed on new businesses engaged in the off-site sale of alcoholic beverages. The conditions required the owner to agree to remove graffiti promptly, provide adequate lighting, remove trash, provide a security guard and, in some instances, limit hours of operation. (23 Cal.App.4th at pp. 382-383.)
 

 Appellants filed a petition for writ of mandate and complaint for damages, declaratory and injunctive relief. They argued that Los Angeles’s ordinances were preempted by state law. The trial court rejected the argument and dismissed the action. On appeal, Division Seven affirmed.
 

 The appellate court rejected the contention that the conditions imposed on the business owners were an impermissible attempt to regulate the sale of alcohol, but deemed them instead to be a permissible attempt to regulate conduct where alcohol was sold. The reviewing court held: “These sorts of conditions do not directly regulate, or have as their effect the regulation of, alcoholic licenses or the manufacture, sale, purchase, possession or transportation of alcoholic beverages. Instead the conditions generally imposed on an owner in the plan approval or revocation process attempt to control or eradicate the unlawful or undesirable activity which often occurs in the immediate vicinity of establishments which dispense alcoholic beverages for off-site consumption. . . . [T]he focus of the ordinance is to abate or eradicate nuisance activities in a particular geographic area by imposing conditions aimed at mitigating those effects. These are typical and natural goals of zoning and land-use regulations. [Citation.]”
 
 (Korean American Legal Advocacy Foundation
 
 v.
 
 City of Los Angeles, supra,
 
 23 Cal.App.4th at p. 388.) Moreover, the fact that “the conditions imposed under the ordinance may have some indirect impact on the sale of alcoholic beverages does not transmute the purpose and scope of the ordinance into a regulation merely seeking to control alcohol sales. [Citation.]”
 
 {Id.
 
 at p. 389.)
 

 The court then went on to hold that the ordinance did not duplicate or contradict state law notwithstanding the fact that both it and state law addressed the abatement of nuisance activity at off-sale liquor businesses. The court distinguished between the “focus and ultimate outcome” of the
 
 *1806
 
 local and state nuisance abatement procedures. “Under the provisions of the Alcoholic Beverage Control Act, should the ABC conclude the [nuisance] accusations are true, a licensee stands to lose his or her alcoholic beverage license [but] would still retain his or her use permit or ‘deemed approved’ status to continue the other aspects of the business. Under the City’s ordinance.....a licensee risks the imposition of further land use conditions or the loss of his or her conditional use permit or ‘deemed approved’ status. A licensee, however, would not lose his or her alcoholic beverage license . . . and could presumably transfer the license to other business premises. [Citation.] Thus, the specific interests and the jurisdiction of each do not conflict. [Citation.]”
 
 {Korean American Legal Advocacy Foundation
 
 v.
 
 City of Los Angeles, supra,
 
 23 Cal.App.4th at p. 391.) Further, though acknowledging that “the ultimate sanction of permit, or ‘deemed approved’ status, revocation could have the effect of prohibiting the sale of alcoholic beverages at a particular offending location . . . nothing in the [Alcoholic Beverage Control] Act evidences an intent for the ABC to exercise sole and exclusive authority to abate nuisances on premises licensed for off-site sales of alcoholic beverages. [Citations.]”
 
 {Id.
 
 at pp. 391-393, fn. omitted.)
 

 The court rejected the further argument that there was preemption by implication, citing Business and Professions Code sections 23790 and 23791 with their express reservation to local government of the power to enact zoning laws. “By expressly reserving to local governments the right to enact local zoning ordinances, and by expressly making the issuance of licenses contingent on satisfying any existing, valid local zoning requirement, it is clear the Legislature did not intend for the state legislation to preempt local zoning regulations.”
 
 {Korean American Legal Advocacy Foundation
 
 v.
 
 City of Los Angeles, supra,
 
 23 Cal.App.4th at p. 393.)
 

 Finally, the
 
 Korean American
 
 court rejected the argument that appellants were not subject to the Los Angeles ordinance because, under Business and Professions Code section 23790, off-sale liquor businesses that are in continuous operation at the time a zoning ordinance is enacted, are exempt from such ordinance. The court found that because the businesses had been closed from the time of the 1992 riot they could not meet this condition.
 
 {Korean American Legal Advocacy Foundation
 
 v.
 
 City of Los Angeles, supra,
 
 23 Cal.App.4th at pp. 397-398.)
 

 Appellants attempt to distinguish
 
 Korean American
 
 but largely without success. Appellants contend that the ordinance involved in
 
 Korean American
 
 was a geographic restriction on off-sale liquor businesses whereas the City’s ordinance is a licensing scheme. This is merely appellants’ characterization of the City’s exercise of its zoning power, however, and not a persuasive
 
 *1807
 
 distinction. Neither are we persuaded by appellants’ argument that
 
 Korean American
 
 is distinguishable because the Los Angeles ordinance was aimed at a documented nuisance whereas appellants have no history of nuisance complaints. The court in
 
 Korean American
 
 acknowledged the criticism directed at liquor stores in South Central, but did not rely on specific evidence of nuisance in reaching its conclusion. Rather, the opinion relied upon a municipality’s authority to address
 
 potential
 
 nuisance situations through its zoning power. (23 Cal.App.4th at p. 388.)
 

 The only preemption argument that survived
 
 Korean American
 
 involves the effect of Business and Professions Code section 23790. As previously noted, that section exempts from zoning ordinances off-sale liquor stores that predate the enactment of such ordinances provided that two conditions are met: “(a) The premises retain the same type of retail license with a license classification,” and “(b) The licensed premises are operated continuously without substantial change in mode or character or operation.” (Bus. & Prof. Code, § 23790, subds. (a) & (b).)
 
 [2]
 
 In
 
 Korean American,
 
 the court ruled only that this section did not apply because the businesses in question had not been in operation continuously, as defined in the statute.
 
 (Id.
 
 at pp. 394-395.) By implication, therefore, the court agreed with the argument advanced by appellants in that case, and advanced here, that section 23790 does preempt local zoning ordinances at least insofar as such ordinances purport to regulate previously existing businesses.
 

 In the instant case, appellants’ second cause of action is premised on the preemptive effect of section 23790. In light of the discussion of this statute in
 
 Korean American,
 
 we conclude it was error for the court to have granted the motion for judgment on the pleadings as to this cause of action. We also conclude, however, that the first, third, seventh and eighth causes of action, all of which relied on a theory of preemption rejected in
 
 Korean American,
 
 were properly dismissed.
 

 
 *1808
 
 III
 

 Appellants next contend that the trial court erred when it granted the City’s motion for judgment on the pleadings on their fourth and fifth causes of action brought under Civil Code section 52.1 and 42 United States Code section 1983. “Since judgment on the pleadings is equivalent to a judgment entered after the sustaining of a demurrer, the standard of appellate review is the same. [Citation.] Thus, *[w]hen a [motion for judgment on the pleadings is granted], we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]’
 
 (Blank
 
 v.
 
 Kirwan
 
 (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)”
 
 (Heredia
 
 v.
 
 Farmers Ins. Exchange
 
 (1991) 228 Cal.App.3d 1345, 1358-1359 [279 Cal.Rptr. 511], original brackets.)
 

 In its motion, the City argued that appellants could not state a cause of action under these statutes because they could not allege membership in any of the classes of people for the protection of whom the statutes were enacted. The court, by minute order, granted the motion but without specifying a reason. We follow the familiar rule that requires us to sustain the trial court’s ruling if it can be sustained on any ground. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266.)
 

 We agree that appellants cannot state a cause of action under Civil Code section 52.1, because they fail to allege the type of rights violation covered by the statute.
 
 [3]
 

 Subdivision (a) of section 52.1 of the Civil Code provides, in pertinent part: “Whenever a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General . . . may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California . . . .” Subdivision (b) permits an individual “whose exercise or enjoyment of rights ... has been interfered with, or attempted to be interfered with, as described in subdivision (a)” to bring an action “in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.”
 

 Appellants take the position that they fall within the purview of the statute because the City, by enacting the Ordinance, has attempted to interfere with
 
 *1809
 
 their right to sell alcoholic beverages “by intimidation and threats of police action, fines, and penalties . . . The argument completely misconstrues the purpose of the statute.
 

 “The Bane Act and related California statutes dealing with discriminatory threats and violence [citations] are California’s response to [the] alarming increase in hate crimes. It was the ‘ “inadequacy of existing law and the increase in crimes committed because of the victim’s minority status” ’ that prompted the Legislature to enact the Bane Act. [Citation.]”
 
 (In re Joshua H.
 
 (1993) 13 Cal.App.4th 1734, 1748, fn. 9 [17 Cal.Rptr.2d 291].) The Bane Act consists of more than Civil Code section 52.1 and it must be read in conjunction with the other statutory provisions of which that section is part. Crucial to an understanding of the Bane Act is section 51.7, subdivision (a), which provides in part: “All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.” (Civ. Code, § 51.7, subd. (a).)
 

 We read these two sections together to require that an action brought under Civil Code section 52.1 must allege that the plaintiff who claims interference of his or her rights also allege that this interference was due to his or her “race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute,” as set forth in section 51.7. (See also Pen. Code, §§ 422.6-422.95 [making criminal interference with the exercise of civil rights by certain protected class a part of the Bane Act];
 
 In re Joshua K, supra,
 
 13 Cal.App.4th at p. 1738, fn. 1.) The failure to so allege constitutes a failure to state a cause of action under the Bane Act. The court below did not err, therefore, in granting the motion for judgment on the pleadings on those causes of action based on Civil Code section 52.1.
 

 Nor did the court err in dismissing appellants’ claims based on 42 United States Code section 1983. That section imposes liability upon “[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .” (42 U.S.C. § 1983.)
 

 “To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must
 
 *1810
 
 show that the alleged deprivation was committed by a person acting under color of state law. [Citations.]”
 
 (West
 
 v.
 
 Atkins
 
 (1988) 487 U.S. 42, 48 [101 L.Ed.2d 40, 48-49,108 S.Ct. 225].) In their fourth cause of action appellants alleged in essence that the conditions imposed on them by the Ordinance might create a “competitive disadvantage” between them and other off-sale liquor stores who were granted conditional use permits prior to the enactment of the Ordinance. These vague allegations of prospective commercial disadvantage fall far short of demonstrating the kind of discrimination that would violate the Fourteenth Amendment’s guarantee of equal protection so as to support an action under section 1983.
 

 Finally, appellants repeat the allegations of their fourth and fifth causes of action that the Ordinance is vague, overbroad and violative of due process. Since, on appeal, judgments are presumed correct, it is the duty of the appellant to affirmatively show error by the trial court in light of the applicable standard of review.
 
 (In re Marriage of Ananeh-Firempong, supra,
 
 219 Cal.App.3d at p. 278.) Simply repeating the allegations of the complaint is not the equivalent of showing error. We conclude that the court did not err in granting the motion for judgment on the pleadings of the fourth and fifth causes of action.
 

 In light of the fact that we affirm dismissal of those causes of action based either on mandamus or constitutional claims, we need not reach the final issue of whether the court erred when it dismissed appellants’ claim for damages on these causes of action because of their failure to comply with the Tort Claims Act. That issue is rendered moot by our disposition of those causes of action.
 

 The judgment is affirmed except as to appellants’ second cause of action, as to which the judgment is reversed. Each side to bear its own costs on appeal.
 

 Hastings, J., and Newman, J.,
 
 *
 
 concurred.
 

 A petition for a rehearing was denied November 3, 1994.
 

 [1]
 

 Ten conditions were imposed on Boccato’s business and thirteen on Duffaut’s. The conditions imposed on Boccato were as follows: “1. The hours of operation shall be limited to between 6:00 A.M. and 2:00 A.M. daily, [f] 2. The installed trash enclosure shall be maintained in sound condition. [1] 3. The business shall provide adequate management and supervisory techniques to prevent loitering, unruliness, and boisterous activities of the patrons outside the business on the subject property. [?] 4. A sign shall be posted conspicuously and prominently at all exits prohibiting loitering, littering and consumption of alcohol on the premises and warning patrons who purchase any and all types of alcoholic beverages that ‘possession and/or consumption of alcoholic beverages in any public sidewalk, parking lot, beach, and/or any public place is prohibited by law and subject to citation and fine. The City of Hermosa Beach vigorously enforces its liquor laws[.]’ Said signs shall be at least 12" x 14", shall be printed in a large type, permanently maintained, and shall be posted in visible locations. [|] 5. An employee who is aware of the conditions of this conditional use permit shall be on the premises during business hours. [1] a. The conditional use permit conditions shall be placed on the property in a location where employees can easily read the conditions. [1] 6. The floor plans shall be as shown on submitted plans and any changes to the interior which substantially alters the primary use permitted under the conditional use permit shall be subject to the review and approval of the Planning Director. Minor modification to the floor plans, including re-arrangement of shelving, displays, counters, or similar items within the market do not need review from the Planning Director. [J] 7. The exterior of the premises shall be maintained in a neat and clean manner. ['{] 8. Individual containers of beer and wine, 16 ounces or less in size shall be packaged in clear bags or containers to make the contents of the container visible. [|] 9. Prior to the conditional use permit being in effect, the applicant shall submit to the planning department, a signed and notarized ‘Acceptance of Conditions’ form. [1] 10. The conditional use permit shall be recorded, and proof of recordation shall be submitted with the planning department.”
 

 The conditions imposed on Duffaut were as follows: “1. The hours of operation shall be limited to between 6:00 A.M. and 2:00 A.M. daily. [1] 2. The business shall provide adequate management and supervisory techniques to prevent loitering, unruliness, and boisterous activities of the patrons on the premises. [5] 3. A sign shall be posted conspicuously and prominently at each exit prohibiting loitering, littering, and consumption of alcohol on the premises and warning patrons who purchase any and all types of alcoholic beverages that ‘possession and/or consumption of alcoholic beverages in any public sidewalk, parking lot,
 
 *1802
 
 beach, and/or any public place is prohibited by law and subject to citation and fine. The City of Hermosa Beach vigorously enforces its liquor laws[.]’ Said signs shall be at least 12" by 14," shall be printed in a large type, permanently maintained, and shall be posted in visible locations. [j[] 4. Exterior signs in disrepair (i.e. fading or peeling paint and/or rusted) shall be repaired and/or repainted and shall be maintained in good condition without damage of any sort, or, alternatively they shall be removed. Any new or replacement signs would be subject to the provisions of the sign ordinance, [f] 5. An employee who is aware of the conditions of this conditional use permit shall be on the premises during business hours. [5] a. The conditional use permit conditions shall be placed on the property in a location where employees can easily read the conditions. H] 6. A landscape plan consistent with the original building plans, depicting the types and quantity of materials to be used on the site, shall be submitted for review and approval by the Planning Director. [1] 7. Individual containers of beer and wine, 16 ounces or less in size, shall be packaged in clear bags or containers to make the contents of the container visible. [1] 8. The exterior of the premises including parking areas shall be maintained in a neat and clean manner. H] 9. The trash container shall be enclosed by a 5' by 7' masonry enclosure with a view obstructing front gate. The location and design of the enclosure shall be reviewed and approved by the Planning Director. Other types of materials may be used if necessary where there is a lack of space. [1] 10. The parking spaces must meet the minimum dimension parking requirements of the zoning ordinance and shall be designed to not result in vehicles overhanging into the public right-of-way. A site plan depicting a revised parking layout shall be submitted for review and approval by the Planning Director. The parking stalls shall be striped consistent with the approved site plan. [U 11. The floor plans shall be as shown on submitted plans and any changes to the interior which substantially alters the primary use permitted under the conditional use permit shall be subject to the review and approval of the Planning Director. Minor modification to the floor plans, including re-arrangement of shelving, displays, counters, or similar items within the market do not need review from the Planning Director. [1] 12. Prior to the conditional use permit being in effect, the applicant shall submit to the planning department, a signed and notarized ‘Acceptance of Conditions’ form. [5] 13. The conditional use permit shall be recorded, and proof of recordation shall be submitted to the Planning Department.”
 

 [2]
 

 The statute provides: “No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city. Premises which had been used in the exercise of those rights and privileges at a time prior to the effective date of the zoning ordinance may continue operation under the following conditions: [1] (a) The premises retain the same type of liquor license within a license classification. [5] (b) The licensed premises are operated continuously without substantial change in mode or character of operation. [<J] For purposes of this subdivision, a break in continuous operation does not include: [1] (1) A closure for not more than 30 days for purposes of repair, if that repair does not change the nature of the licensed premises and does not increase the square footage of the business used for the sale of alcoholic beverages. [J] (2) The closure for restoration of premises rendered totally or partially inaccessible by an act of God or a toxic accident, if the restoration does not increase the square footage of the business used for the sale of alcoholic beverages.”
 

 [3]
 

 The parties also refer to this statute by its popular name, the Tom Bane Act or Bane Act.
 

 *
 

 Judge of the Los Angeles Superior court sitting under assignment by the Chairperson of the Judicial Council.