[No. B091628. Second Dist., Div. Seven. Apr. 8, 1996.]

TADASHI SUZUKI et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

James K. Hahn, City Attorney, Claudia McGee Henry and Gwendolyn Ryder Poindexter, Assistant City Attorneys, for Defendant and Appellant.

Stephen L. Jones for Plaintiffs and Respondents.

**OPINION**

**JOHNSON, J.**—In this action owners of a retail store licensed to sell alcoholic beverages for off-site consumption seek to prevent the City of Los Angeles (City) from using its administrative procedures to impose conditions and restrictions on the operation of their business.

The trial court found application of the City's ordinance to licensed premises which predated enactment of the ordinance was prohibited under

section 23790 of the Business and Professions Code[1] which allows existing licensees to continue operations despite subsequently enacted zoning ordinances. The trial court granted judgment in favor of the store owners to prohibit the city from imposing conditions to abate nuisance activities at their business. In addition, the trial court granted the owners relief from stay of the judgment pending review of this matter on appeal.

We conclude section 23790 does not have a preemptive effect on the ordinance at issue in this case which has as its purpose and effect the abatement of specific nuisance activities at a particular offending location. Accordingly, we reverse the judgment of the trial court. We also vacate the trial court's order granting relief from stay of the judgment which allowed the owners to avoid compliance with the conditions the city found necessary to abate the nuisance at their liquor store.

### FACTS AND PROCEEDINGS BELOW

Since 1981 respondents, Tadashi Suzuki and Reiko Suzuki (Suzuki), have owned and operated a retail store in South Central Los Angeles known as "Tom's Liquor Store No. 2" which sells alcohol for off-site consumption.

After the civil disturbance of 1992, the Suzukis' store at Florence and Normandie attracted increased crowds and activity at the disturbance's flash point. The store apparently became a police problem and a source of complaints for persons living in the area. The Los Angeles Police Department reported several arrests and detentions for illegal activity at the Suzukis' store, including gambling, drinking in public, assault, battery, burglary and robbery. Neighbors complained about people loitering around the store, drinking in public, illegal drug traffic, harassment of passersby, gambling, noise and prostitution activity at and around the store. The Department of Alcoholic Beverage Control sent a letter to the Suzukis outlining some of the reported illegal activity at their store and warning them to correct the "objectionable conditions or face disciplinary action" against their alcoholic beverage license.

Based on these complaints the City initiated nuisance abatement proceedings under its nuisance abatement ordinance. (L.A. Mun. Code § 12.21A.15.)[2] From testimony and evidence presented at the hearing, the City's zoning administrator found the repeated nuisance activities at the

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

[2] Los Angeles Municipal Code, section 12.21A.15 is entitled "Additional Grounds for the Modification or Discontinuance of Commercial or Industrial Uses." The first section defines

liquor store adversely affected the health, peace and safety of persons residing or working in the area and constituted a public nuisance. The zoning

the type of activity which constitutes a private or public nuisance under the ordinance. The second section outlines the procedural due process aspects of the nuisance abatement ordinance.

"(a) **Zoning Administrator Authority.** Notwithstanding any other provisions of this Code to the contrary, the Zoning Administrator may require the modification or discontinuance of a commercial or industrial use if the Zoning Administrator finds that as operated or maintained, such use:

"(1) Adversely impacts nearby agricultural, residential, or commercial uses and

"(2) Jeopardizes or endangers the public health or safety of persons residing or working on the premises or in the surrounding area; or

"(3) Constitutes a public nuisance; or

"(4) Has resulted in repeated nuisance activities including but limited to disturbances of the peace, illegal drug activity, public drunkenness, drinking in public, harassment of passersby, gambling, prostitution, sale of stolen goods, public urination, theft, assaults, batteries, acts of vandalism, loitering, excessive littering, illegal parking, loud noises (particularly in late night or early morning hours), traffic violations, curfew violations, lewd conduct or police detentions and arrests; or

"(5) Violates any provision of this chapter or any other city, state, or federal regulation, ordinance or statute.

"(b) **Procedures - Notice - Hearings - Appeals.** The Zoning Administrator may give notice to the record owner and the lessee of the real property affected to appear at a public hearing at a time and place fixed by the Administrator, and show cause why the use, building, or structure should not be modified, discontinued, or removed as the case may be. A written notice shall be mailed not less than 24 days prior to the date of hearing to the owner and lessee of the property involved, and to the owners of all property within and outside of the City that is within 500 feet of the exterior boundaries of the property involved, using for the purpose of notification the last known name and address of such owners as shown upon the records of the City Clerk or, in the case of property outside of the City, the records of the County Assessor. If all property within the 500-foot radius is under the same ownership as the property involved in the proceeding, then the owners or [sic] all property which adjoins said ownership, or is separated only by a street, alley, public right-of-way or other easement, shall also be notified as provided herein.

"Written notice shall also be mailed to residential, commercial, and industrial occupants of all property within 500 feet of the exterior boundaries of the property involved. This requirement can be met by mailing such notice to 'occupant.' If this notice provision will not result in notice being given to at least 20 different owners of at least 20 different parcels of property other than the subject property, and at least 50 different persons, then the 500-foot radius for notification shall be increased in increments of 50 feet until the required number of persons, and parcels of property are encompassed within the expanded area. Notification shall then be given to all property owners and occupants within such area.

"After such notice and hearing, the Administrator may require the modification or discontinuance, or removal of the subject use building or structure. *As part of any such action, the Administrator may impose such conditions as the Administrator deems appropriate, including those necessary to protect the best interest of the surrounding property or neighborhood, to eliminate, lessen, or prevent any detrimental effect thereon, or assure compliance with other applicable provisions of law. Conditions imposed may include the establishment of amortization schedules, and may affect the establishment, maintenance, or operations of the subject commercial or industrial use and any related uses, building or structures.*

"Any such action will be supported by written findings, including a finding that it does not impair the constitutional rights of any person. However, the Administrator may require that a

administrator imposed 17 operating conditions to "prevent or mitigate against future nuisance activities at this site." These conditions, among other things, prohibited the sale of alcoholic beverages for consumption on the premises, exterior advertising of alcoholic beverages, sale of small quantities of ice cubes or cups, furnishing can openers or corkscrews, game machines on the premises and public telephones on the premises. Other conditions limited the hours of operation to between 6:30 a.m. and 10 p.m. and also limited hours for deliveries and trash hauling. Still other conditions required graffiti removal once a week, signs prohibiting drinking or loitering and providing a 24-hour complaint line number, removal of trash and litter, and patrols by a security guard during all hours of operation.

The Suzukis appealed to the board of zoning appeals to challenge the zoning administrator's finding their liquor store constituted a public nuisance, and to challenge the conditions limiting advertising, hours for delivery, hours of operation and requiring a security guard. The board of zoning appeals also took public testimony and reviewed the findings of the zoning administrator. The board deleted the conditions concerning the sale of ice and drinking on the premises, clarified other conditions and otherwise affirmed the findings and decision of the zoning administrator.

The Suzukis appealed to the city council. The city council heard testimony, reviewed the decisions of the board of zoning appeals and affirmed the board's decision.

The Suzukis filed a petition for writ of mandate, claiming state law prevented the City from applying its ordinance to prohibit or condition the

use be discontinued or a building removed only upon finding that (i) prior governmental efforts to cause the owner or lessee to eliminate the problems associated with the premises have failed (examples include formal action by the Police Department, Department of Building and Safety, the Administrator or the Planning Department); and (ii) that the owner or lessee has failed to demonstrate, to the satisfaction of the Administrator, the willingness and ability to eliminate the problems associated with the premises.

"An appeal from the action of the Administrator may be taken to the Board of Zoning Appeals and to the City Council in the same manner as prescribed in Section 12.28 for conditional use appeals. However, only the Administrator may require the discontinuance of a use. Further, if it is established to the satisfaction of the Board or Council that the proposed action impairs the constitutional rights of any person, then it shall modify the proposed action accordingly.

"(c) **Violations.** It shall be unlawful to violate or fail to comply with any requirement or condition imposed by final action of a Zoning Administrator, Board, or Council pursuant to this subsection. Such violation or failure to comply shall constitute a violation of this chapter and shall be subject to the same penalties as any other violation of this chapter. In the event of a violation of an order of discontinuance or removal, the Department of Building and Safety is authorized to revoke the Certificate of Occupancy for the property in violation." (Italics added.)

continued operation of their business which was established and licensed prior to enactment of the City's ordinance. They claimed the Alcoholic Beverage Control Board has exclusive jurisdiction under the Alcoholic Beverage Control Act (§ 23000 et seq.) and article XX, section 22 of the California Constitution to regulate the sale of alcoholic beverages.

The Suzukis moved for summary judgment, which was granted by the trial court. The trial court found section 23790 preempted the City's nuisance abatement procedures. The trial court issued a writ of mandate requiring the City to set aside its action imposing restrictions and conditions on the continued operation of the Suzukis' liquor store and ordered the City to refrain from applying its ordinance so long as the nature and operation of the Suzukis' business remained unchanged. Thereafter, the trial court granted the Suzukis relief from stay of the judgment pending appeal.

The City appeals from the judgment and from the court's order granting the Suzukis relief from the stay.

## DISCUSSION

■ "Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no material issue of fact to be tried. (Code Civ. Proc., § 437c; *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]; *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Johnson* v. *Berkofsky-Barret Productions, Inc.* (1989) 211 Cal.App.3d 1067, 1071 [260 Cal.Rptr. 67].) The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. (*State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 964 [267 Cal.Rptr. 379].)" (*B & E Convalescent Center* v. *State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 88-89 [9 Cal.Rptr.2d 894].)

" 'The appellate court will only reverse the judgment of the superior court if it is based on an erroneous conclusion of law. (*Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].) When the facts do not conflict and the issues involve proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. [Citation].' (*Alba* v. *Los Angeles Unified School Dist.* (1983) 140 Cal.App.3d 997, 1005 [189 Cal.Rptr. 897].)" (*Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 625 [232 Cal.Rptr. 50].)

■ The only issue presented in this appeal is a legal one, i.e., whether section 23790 prevents the City from using its administrative procedures to

abate nuisances by imposing conditions on the continued operation of a liquor store which had been in continuous operation prior to enactment of the City's nuisance abatement ordinance.

I.  *The City's Ordinance Is a Nuisance Abatement Rather Than a Zoning Ordinance, Therefore Section 23790 Does Not Prevent Its Application to a Business Which Was Licensed to Sell Alcoholic Beverages Prior to Enactment of the Ordinance.*

The civil disturbance of spring 1992 damaged or destroyed many retail and liquor stores in South Central Los Angeles. Owners of destroyed properties were required to obtain a permit from the City prior to rebuilding. As part of the City's plan approval process the City imposed numerous conditions on the operations of such businesses as a precondition of securing building plan approval.

In *Korean American Legal Advocacy Foundation* v. *City of Los Angeles* (1994) 23 Cal.App.4th 376 [28 Cal.Rptr.2d 530] (*Korean American*) owners and operators of businesses licensed to sell alcoholic beverages which had been destroyed during the civil disturbance challenged the City's ordinances imposing conditions and restrictions on the rebuilding of their businesses. We found the City's permit revocation and plan approval processes were not preempted by the state constitutional provision granting the Alcoholic Beverage Control Board exclusive jurisdiction over the sale of alcoholic beverages. We also found the Legislature did not intend to preempt the field of local zoning when it enacted the Alcoholic Beverage Control Act. Finally, because the businesses involved in *Korean American* had been destroyed and had not been rebuilt, and therefore had not been "continuously in business," they were no longer exempt from having to comply with local zoning ordinances enacted after their businesses were established.

The Suzukis point out the conditions the City imposed in this case are virtually identical to the types of conditions the City imposed as part of its plan approval process when previously existing liquor stores sought to rebuild, as discussed in *Korean American.* The conditions also are similar to those imposed on persons seeking new conditional use permits to sell alcoholic beverages in the City, and similar to those imposed as part of the permit revocation process. They therefore contend Los Angeles Municipal Code, section 12.21A.15, which purports to authorize the imposition of conditions and restrictions on existing businesses to abate nuisances, is in reality a zoning ordinance. Thus, the Suzukis argue, as a zoning ordinance, it may not be applied validly to their business because that business is exempt under the authority of section 23790. The latter provision allows existing

businesses to continue operations despite the later enactment of zoning ordinances. They point out that, unlike the situation in *Korean American*, they have been in continuous operation since 1981. Therefore, section 23790 prevents the City from imposing conditions on the continued operation of their business in the name of nuisance abatement or otherwise.

Section 23790 of the Alcoholic Beverage Control Act provides in pertinent part: "No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city. Premises which had been used in the exercise of those rights and privileges at a time prior to the effective date of the zoning ordinance may continue operation under the follow conditions:

"(a) The premises retain the same type of retail liquor license within a license classification.

"(b) The licensed premises are operated continuously without substantial change in mode or character of operation. . . ."[3]

The Suzukis, and the trial court below, rely primarily on the decision in *Boccato* v. *City of Hermosa Beach* (1994) 29 Cal.App.4th 1797 [35 Cal.Rptr.2d 282] in support of their contention the City's ordinance is a zoning ordinance and therefore preempted by section 23790. In *Boccato* the city enacted an ordinance which required all businesses selling alcoholic beverages for off-site consumption to obtain a conditional use permit. The ordinance was directed at nuisance mitigation and imposed approximately 15 operating conditions on all businesses so licensed in the City of Hermosa Beach. The ordinance applied to all businesses selling alcoholic beverages

[3]Section 23790 in its entirety provides as follows:

"No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city. Premises which had been used in the exercise of those rights and privileges at a time prior to the effective date of the zoning ordinance may continue operation under the follow conditions:

"(a) The premises retain the same type of retail liquor license within a license classification.

"(b) The licensed premises are operated continuously without substantial change in mode or character of operation.

"For purposes of this subdivision, a break in continuous operation does not include:

"(1) A closure for not more than 30 days for purposes of repair, if that repair does not change the nature of the licensed premises and does not increase the square footage of the business used for the sale of alcoholic beverages.

"(2) The closure for restoration of premises rendered totally or partially inaccessible by an act of God or a toxic accident, if the restoration does not increase the square footage of the business used for the sale of alcoholic beverages."

for off-site consumption without regard to whether the given business had a history of either citizen complaints or police problems. A business would no longer be able to legally sell alcoholic beverages in the City of Hermosa Beach if it failed to obtain, or was denied, a conditional use permit in compliance with the ordinance. (29 Cal.App.4th at p. 1801.)

The owner of a grocery store and the owner of a liquor store challenged the ordinance. Neither business had ever been the target of either citizen or police complaints. Among other contentions, they claimed the city's ordinance was unconstitutional, both facially and as applied to their businesses, on the basis it was preempted by state regulation of alcoholic beverages. The trial court granted judgment on the pleadings in favor of the city and the store owners appealed.

Following the decision in *Korean American*, the *Boccato* court found there was no constitutional preemption and that the Alcoholic Beverage Control Act did not occupy the field precluding regulation of licensed premises through local zoning ordinances. However, the *Boccato* court agreed with the store owners that section 23790 preempted local zoning ordinances to the extent an ordinance purported to regulate previously existing businesses licensed to sell alcoholic beverages. (29 Cal.App.4th at p. 1807.) Therefore, the court concluded it was error to grant judgment on the pleadings on the cause of action alleging the city's ordinance as applied to them was preempted under section 23790. (29 Cal.App.4th at p. 1807; see also, *Mussalli v. City of Glendale* (1988) 205 Cal.App.3d 524 [252 Cal.Rptr. 299] [city ordinance prohibiting all sales of alcoholic beverages at automobile service stations conflicted with section 23790 as applied to businesses which pre-dated ordinance].)

The decision in *Boccato* concerned a zoning ordinance whose purpose and effect differ markedly from the ordinance at issue in the case at bar. Therefore, both the Suzukis and the trial court erred in concluding *Boccato* controls the proper disposition of this case, which instead involves the valid exercise of a city's police power to abate nuisances.

The City's ordinance applies to *any* business, whether or not it sells alcoholic beverages, as long as the business as operated or maintained constitutes a nuisance. By contrast, the ordinance in *Boccato* specifically targeted businesses selling alcoholic beverages, irrespective of nuisance activity. Significantly, the purported penalty for failure to comply with the ordinance in *Boccato* was loss of the right to sell alcoholic beverages in the City of Hermosa Beach. The *Boccato* court recognized the regulation of

liquor licenses is within the exclusive jurisdiction of the Alcoholic Beverage Control Board, and for this reason found the Hermosa Beach ordinance invalid as applied to existing licensees.

In addition, the ordinance in *Boccato* had several of the typical characteristics of a zoning, rather than a nuisance abatement, ordinance. The ordinance in *Boccato* was forward looking. Its purpose was to prevent in advance any nuisance activities potentially associated with retail stores selling alcoholic beverages for off-site consumption. It was not directed at any identifiable store, i.e., the ordinance was not directed at a specific location known for repeated nuisance activities. It was an ordinance of general application which applied to any business which sold alcoholic beverages for off-site consumption. Moreover, it purported to apply to all such businesses, regardless of whether the specific business had a history of police or citizen complaints in the past or not.

In the present case, by contrast, the City's ordinance looks to the past. It operates only in response to a specific business with a documented history of nuisance problems. The City's ordinance does not purport to deal with activities in the future, but is designed to be enforced in response to specific historical problems with a given business. It is not directed solely at retail stores selling alcoholic beverages for off-site consumption. It could apply to any industrial or commercial business which as operated or maintained constitutes a nuisance. Its focus is on those businesses whose activities in the past have jeopardized the health and well-being of the community in which they are situated. Because the purpose of the ordinance is to authorize the city to respond to an existing nuisance, it is not an ordinance of general application because not all commercial and industrial businesses in the city are equally impacted by its effects.

While both ordinances involve some of the same types of operating conditions, and both concern the abatement of nuisance activities, the ordinance in *Boccato* is designed for broad and general application to ensure reduced nuisance problems in the future, while the City's ordinance is narrow and specific to a certain location and is only triggered by events which have occurred in the past. Although these differences may appear inconsequential, they are significant in determining whether the purpose and effect of a particular ordinance is for zoning rather than for nuisance abatement.

These differences were explained by our Supreme Court in *Jones* v. *City of Los Angeles* (1930) 211 Cal. 304 [295 P. 14]. Because the court's decision

in *Jones* disposes of many of the Suzukis' contentions, we quote from the *Jones* decision at length. In *Jones* the city passed an ordinance prohibiting sanitariums for the treatment of nervous disorders in an area of Mar Vista, then recently annexed by Los Angeles. Owners of four sanitariums operating in the proscribed area brought suit to enjoin enforcement of the ordinance. Preliminarily, the court noted the ordinance was not invalid on its face. "That zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of police power, is now well established; and it is equally well established that the power extends to the regulation of uses of property which do not actually amount to nuisances. As Mr. Justice Lennon said in *Miller* v. *Board of Public Works* [(1925)] 195 Cal. 477, 487 [234 P. 381, 38 A.L.R. 1479]: '. . . *The police power as evidenced in zoning ordinances has a much wider scope than the mere suppression of the offensive uses of property . . . it acts not only negatively but constructively and affirmatively for the promotion of the public welfare.*' " (211 Cal. at p. 307, italics added.)

The court next considered whether the zoning ordinance could be applied to eradicate a business which began lawfully, and continued to operate lawfully, and which had only become a nonconforming use by virtue of the ordinance. The court held absent a finding a particular business as operated constituted a nuisance, a zoning ordinance could not lawfully require removal of an existing nonconforming use. "As a matter of practice, also, those who have drafted ordinances have usually proceeded with due regard for valuable, vested property interests, and have permitted existing, nonconforming uses to remain. They are very generally agreed that the destruction of an existing nonconforming use would be a dangerous innovation of doubtful constitutionality, and that a retroactive provision might jeopardize the entire ordinance. 'Zoning . . . holds that an ounce of prevention is worth a pound of cure and that it is fairer to all concerned to prevent the establishment in residence districts of objectionable businesses than to drive them out once they were established. . . . *Zoning looks to the future, not the past*, and it is customary to allow buildings and businesses already in the district to remain, although of a class which cannot be established. *If such a business constitutes a nuisance, it can still be removed under the police power, but the zoning acts in themselves do not customarily interfere with existing conditions.*' [Citations.] '*The purpose of zoning, which is said to be the crystallization of present conditions and the constructive control of future development, does not require that existing uses be changed.* Hence it has been generally assumed that any attempt to make zoning ordinances retroactive would meet with the opposition of the courts and might result in their

declaring the ordinance as a whole unconstitutional.' [Citation.]" (211 Cal. at pp. 310-311, italics added.)[4]

Finally, the court rejected the trial court's view the zoning ordinance, as applied, could instead be upheld as a nuisance abatement ordinance. "Assuming that the above statements are intended as a finding that the sanitariums of plaintiffs are nuisances as now conducted, it hardly seems supported by the record. . . . But even such a finding does not go to the root of the matter, and is, so far as the validity of this ordinance is concerned, wholly immaterial. *The individual, or the city, still has the right to enjoin acts which constitute a private or public nuisance and this right is given as a protection against the improper conduct of any lawful business.* [Citation.] This ordinance expressly applies to any hospitals, asylums, and sanitariums for the care or treatment of persons suffering from 'mental or nervous diseases.' It affects all such places in the same manner, irrespective of whether they are conducted properly or improperly. The question of its constitutional validity must, therefore, be considered apart from the particular conditions alleged to exist in the establishments maintained by plaintiffs.

*"As so considered, we are satisfied that it cannot find support in the legislative power to prohibit nuisances."* (211 Cal. at p. 315, italics added.)

In reaching its conclusion, the court explained that unlike zoning ordinances, there is no legal impediment to retroactive application of a nuisance abatement ordinance based on the difference between the object and scope of nuisance ordinances and the compelling public necessity to abate nuisances wherever found. "We repeat, therefore, that the ordinance involved herein is to be supported upon principles of zoning and not as a prohibition directed against actual nuisances. . . . *And here the distinction between the power to prohibit nuisances and the power to zone is exceedingly important. The power*

---

[4]The Supreme Court reaffirmed this principle in *Edmonds* v. *County of Los Angeles* (1953) 40 Cal.2d 642, 651 [255 P.2d 772]. There the court acknowledged, "[t]he rights of users of property as those rights existed at the time of the adoption of a zoning ordinance are well recognized and have always been protected. [Citation.] Accordingly, a provision which exempts existing nonconforming uses is ordinarily included in zoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses. . . ." (See also 8 Cal. Real Estate Law & Practice (1996) Zoning Power, § 260.43 et seq., p. 260-50 et seq.; 6 Powell on Real Property (1996) Zoning, § 79C.15[4][i], p. 79C-515 (Jan. 1995).)

Section 23790 is an example of such a statute permitting existing nonconforming uses to continue in operation despite subsequently enacted zoning ordinances, provided the use and character of the business remain the same as before passage of a zoning ordinance. (See, e.g., *Town of Los Gatos* v. *State Bd. of Equal.* (1956) 141 Cal.App.2d 344 [296 P.2d 909] [section 23790 did not operate to exempt nonconforming use which had discontinued sale of alcoholic beverages more than four years prior to enactment of ordinance].)

over nuisances is more circumscribed in its objects; but once an undoubted menace to public health, safety, or morals is shown, the method of protection may be drastic. Private businesses may be wholly prohibited, where their danger is sufficiently great; and other businesses, no matter how well established and how great the resulting loss, may be excluded from certain districts where, by reason of the circumstances, their maintenance has become a public nuisance in those districts. In these cases, the public welfare demands even the destruction of existing property interests. . . .

*"Zoning is not so limited in its purposes.* It may take into consideration factors which bear no relation to the public health, safety, or morals, but which come within the meaning of the broader term 'general welfare'. It deals with many uses of property which are in no way harmful. *If its objects are so much broader than those of nuisance regulation; if its invasion of private property interests is more extensive; and if the public necessity to justify its exercise need not be so pressing, then does it not follow that its means of regulation must be more reasonable and less destructive of established interests?* . . . '. . . Property regulation by means of zoning is not restricted to what is disorderly or offensive . . . in attempting to apply to all types of zoning ordinances the summary methods of prevention and suppression which are employed in the case of nuisances, municipalities obviously fail to take into account the fact that zoning not only includes but also supplements nuisance regulation. A restriction imposed to prohibit an offensive use is not a taking of property for which compensation must be made and in the abatement of nuisances retroactive measures are valid. *Granting that a zoning ordinance may operate retroactively where there is clearly an element of nuisance, it does not follow that a similar disposition may be made of every type of nonconforming use dealt with in zoning.*' [Citation.] 'No one gainsays that a municipal government within its police power has the right to prescribe rules regulating the character of buildings to be erected and the material to be used within certain prescribed boundaries. . . . *But such ordinances must . . . relate to the future. Of course, that does not prevent cities from moving to abate nuisances wherever occurring.*' [Citation.]" (211 Cal. at pp. 316-317, italics added.)

The court concluded the zoning ordinance was unconstitutional as applied to the existing sanitarium owners because their nonconforming uses did not constitute a nuisance. (211 Cal. at p. 321.)

Applying these principles to the City's ordinance in the case at bar, the conclusion is inescapable it has as its purpose and effect the typical characteristics of a nuisance abatement rather than a zoning ordinance. The ordinance does not relate to the future. It looks to the past to cure an existing

menace to the health, safety and general welfare of the public. It does not apply with equal force to all existing businesses in the area, nor to all businesses in the area which hold liquor licenses. Nor does it impose blanket conditions on the operation of all existing businesses within its jurisdiction. Instead its object is to eradicate a particular offensive use at a particular offending location based on historical events.

As a nuisance abatement ordinance, the City's ordinance in the present case is distinguishable from the zoning ordinance under consideration in *Boccato*. Consequently, that decision is not authority for the proposition section 23790 preempts the City's nuisance abatement ordinance as applied to nonconforming licensees whose business predated enactment of the ordinance.

The question remains whether section 23790 nevertheless operates as a statutory exemption for nonconforming licensees from compliance with the City's nuisance abatement ordinance.

II. *Section 23790 Does Not Exempt Existing Nonconforming Uses From the City's Administrative Procedures to Abate Nuisances.*

■ The Suzukis argue that even if the City's ordinance is a nuisance abatement ordinance, it may not be applied to them because section 23790 exempts their business from the operation of later enacted ordinances. They contend if a particular licensee operates his business in such a way as to cause police problems and be harmful to the surrounding community, the proper solution is for the City to instead refer the matter to the Alcoholic Beverage Control Board for investigation and action. (§§ 24201, 24203.)

The scope of protection provided to nonconforming licensees by section 23790 is not so broad. The plain language of the statute only exempts existing nonconforming uses from compliance with later enacted zoning ordinances, and then only when the business has continuously operated without substantial change in either mode or character of operation. As we have seen, neither the purpose nor effect of the City's nuisance abatement ordinance is that of a zoning ordinance.

A review of the legislative history of the 1982 and 1989 amendments to section 23790 indicates a legislative intent to protect vested interests of licensees otherwise lawfully engaged in a business subsequently made a

nonconforming use by a commercial zoning ordinance.[5] However, neither the language of section 23790 nor anything in the legislative history of these amendments indicates this section was intended to operate to exempt a nonconforming licensee from compliance with nuisance abatement ordinances—whenever enacted. In the absence of a clear legislative mandate to the contrary, there does not appear to be a valid reason why business owners like the Suzukis should be exempt from the valid exercise of the City's police power to eradicate an existing nuisance. (See, e.g., Gov. Code, § 38771 [empowers city legislative bodies to declare what constitutes a nuisance]; cf. *Goat Hill Tavern* v. *City of Costa Mesa* (1992) 6 Cal.App.4th 1519 [8 Cal.Rptr.2d 385] [as a legal nonconforming use tavern owner should have been allowed to continue operations in the absence of a finding the business constituted a nuisance].)

For example, even a use expressly allowed in a valid use permit is still subject to a nuisance abatement action if the business is operated in such a way as to be injurious to persons living and working in the area. (See, e.g., *Livingston Rock etc. Co.* v. *County of L. A.* (1954) 43 Cal.2d 121 [272 P.2d 4] [there can be no constitutional objection to the authorized revocation through administrative procedures of an automatic exception, where after a public hearing, upon notice, it is found that the nonconforming use is so exercised as to be detrimental to the public health or safety, so as to constitute a nuisance]; *O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151 [96 Cal.Rptr. 484] [although plaintiff acquired vested right in use permit, finding activity at drive-in restaurant amounted to a nuisance constituted compelling public necessity which authorized city to abate the nuisance through its administrative procedures]; *Christopher* v. *Jones* (1964) 231 Cal.App.2d 408 [41 Cal.Rptr. 828] [use permit expressly authorizing activities of repackaging plant did not prevent nuisance action to prevent leak of chlorine gas from the plant]; *Wheeler* v. *Gregg* (1949) 90 Cal.App.2d 348 [203 P.2d 37] [permit issued to owner of rock and gravel company gave owner vested right to continue nonconforming use in the absence of a finding such use constituted a nuisance].)

Moreover, it is doubtful whether a generally worded statute, such as section 23790 authorizing nonconforming uses to continue operations,

<hr/>

[5]We granted the City's request to take judicial notice of these legislative materials. (Evid. Code, §§ 452, 459.) The 1989 amendment to section 23790 sought to clarify the types of breaks in operation which would not result in a licensee losing exempt status. (See, e.g., Senate Rules Committee, Staff Analysis of Assem. Bill No. 183 (June 14, 1989).) The 1982 amendment prevented nonconforming uses from expanding their operation or changing license category on penalty of losing deemed approved status. (See, e.g., Assembly Committee on Governmental Organization, Staff Analysis of Sen. Bill No. 1946 (June 23, 1982).)

should exempt the use from nuisance abatement proceedings unless such exemption is expressly contemplated in the statute.

In a somewhat analogous situation, Civil Code section 3482 provides "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." However, decisions of our Supreme Court have interpreted this provision very narrowly. For example, in *Hassell* v. *San Francisco* (1938) 11 Cal.2d 168 [78 P.2d 1021], property owners sought to enjoin the construction of a public convenience station above ground in the Marina area of San Francisco, claiming it would obstruct their view of the bay and create unsanitary conditions. The trial court agreed with the property owners the station as planned would create a public nuisance. The government appealed, claiming under the authority of Civil Code section 3482, construction of the public convenience station could not be deemed a nuisance. The Supreme Court disagreed. "However, the authority for the construction is not express. [Citations.] 'A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the Legislature contemplated the doing of the very act which occasions the injury.' [Citation.]" (11 Cal.2d at p. 171.)[6]

Similarly, in *Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285 [142 Cal.Rptr. 429, 572 P.2d 43], property owners who lived adjacent to a municipal sewage treatment plant brought an action seeking damages for inverse condemnation and nuisance. The property owners prevailed on their nuisance cause of action and the city appealed. In defense of the nuisance cause of action the city asserted the exemption of Civil Code section 3482. The court adopted the *Hassell* court's narrow interpretation of the exemption provided by this statute. "This interpretation was reiterated in *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 938 [101 Cal.Rptr. 568, 496 P.2d 480], and we adhere to it in the case at bar. A requirement of 'express' authorization embodied in the statute itself insures that an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result were every generally worded statute a source of undetermined immunity from nuisance liability." (20 Cal.3d at p. 291.) The court found the general statutory authorization of municipal construction of sewage plants did not expressly sanction production of any particular level of odors so as to preclude a finding the odors constituted a nuisance. "None

[6]For a more extensive discussion of nuisances authorized by statute, see 9 California Real Estate Law and Practice (1996) The Law of Nuisance, section 320.40 et seq., page 320-36 et seq.; 5 Powell on Real Property (1995) Nuisance, section 704[3][e], page 64-56 et seq.

of the Government Code statutes under which the city claims to act mentions the possibility of noxious emanations from such facilities. Nor can we find that such odors were authorized by the 'plainest and most necessary implication' from the general powers there conferred, or that it can be fairly said that the Legislature contemplated, to any extent, the creation of a malodorous nuisance when it authorized sewage plant construction. . . ." (20 Cal.3d at p. 292.) Accordingly, the court affirmed the judgment in favor of the property owners on their nuisance cause of action. (*Id.* at p. 299; cf. *Orpheum Bldg. Co.* v. *San Francisco Bay Area Rapid Transit Dist.* (1978) 80 Cal.App.3d 863 [146 Cal.Rptr. 5] [Public Utilities Code expressly empowered BART to construct any and all facilities necessary or convenient for rapid transit service].)

As noted, section 23790 does not mention the word "nuisance," let alone expressly authorize the types of nuisance activities apparently occurring on the Suzukis' business premises. Nor could an argument be made gambling, drinking in public, assaults, acts of prostitution or the like are authorized as a necessary part of the licensed sale of alcoholic beverages for off-site consumption. Nor can it be reasonably said the Legislature agreed to condone harmful nuisance activities in enacting section 23790 when it authorized a nonconforming use to continue operations despite later enacted zoning ordinances. We therefore hold section 23790 does not exempt a licensee who allows his business to be maintained as a nuisance from the City's administrative procedures to abate what has been found, after proper notice and hearing, to constitute a nuisance.[7] We therefore further conclude the Suzukis are not immune from the City's administrative procedures to abate the nuisance activity at their liquor store despite their status as a licensed but

---

[7]The Suzukis express concern local governments may use the simple expedient of labeling anything a nuisance so as to avoid any preemptive effect of section 23790, and thereby render the statute a nullity. Although the definition of nuisance is very broad (see Civ. Code, § 3479; *Martinez* v. *Pacific Bell* (1990) 225 Cal.App.3d 1557, 1565 [275 Cal.Rptr. 878]), the Suzukis' concern a city may be permitted to act arbitrarily and unreasonably in declaring a nuisance appears to be unwarranted. The court in *Leppo* v. *City of Petaluma* (1971) 20 Cal.App.3d 711 [97 Cal.Rptr. 840] addressed these concerns. The *Leppo* court held in all cases where a city seeks to abate a nuisance, the city must afford property owners a hearing and opportunity to be heard, and that a determination of nuisance may only be based on competent sworn testimony. (20 Cal.App.3d at p. 717.) With regard to the finding of nuisance, the court noted " '[u]sually it has statutory power, vested in its governing body, to declare and abate public nuisances. But neither at common law nor under such express power can it, by its mere declaration that a specified property is a nuisance, make it one when in fact it is not.' " (*Id.* at p. 718.)

Under Los Angeles Municipal Code, section 12.21A.15 (see fn. 2, *ante*) property owners are afforded notice and an opportunity to be heard. The zoning administrator's findings are based on evidence taken at the hearing and such findings may be appealed to the board of zoning appeals and to the city council, each of which also may take evidence. This procedure for review should eliminate any potential for arbitrary findings of nuisance.

nonconforming use.[8] (See, e.g., *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 101 [48 Cal.Rptr. 889, 410 P.2d 393].) In view of our conclusion the City's actions were authorized and not preempted by section 23790, we also vacate the order granting relief from stay of the trial court judgment.

## DISPOSITION

The judgment is reversed and the order granting relief from stay of the trial court judgment is vacated. Each side to bear its own costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

Respondents' petition for review by the Supreme Court was denied July 10, 1996.

---

[8]Because we conclude section 23790 does not prevent the City from applying its later enacted nuisance abatement ordinance against an existing establishment licensed to sell alcoholic beverages for off-site consumption, we do not reach, and express no opinion on, the question whether a change in the character of activities surrounding the liquor store constitutes a change in the mode or character of the licensed operation under section 23790 such that the licensee loses its status as a lawfully operating nonconforming use.